IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO.: 21-cr-610 |
| FRANK RAFARACI, | Sentencing: November 9, 2023 |
| Defendant. | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its undersigned counsel, respectfully submits this memorandum to aid the Court in sentencing the defendant Frank Rafaraci. On April 20, 2022, the defendant pleaded guilty to giving a bribe of approximately $33,500 to a public official, in violation of 18 U.S.C. §§ 201(b)(1)(A) & (C) and 2. As a term of the defendant's plea agreement, the parties stipulated to an offense level calculation. The United States Probation Office determined that a higher offense level is appropriate. The government respectfully requests that the Court apply the government's calculation, which results in a guideline range of 8 to 14 months. In consideration of the 3553(a) factors, the government recommends a sentence at the bottom of the guideline range. Should the Court adopt Probation's calculation, the government respectfully requests that the Court consider the Section 3553(a) factors as grounds to depart from the guidelines.

The key difference between the government's calculation and Probation's calculation is whether the applicable guideline range is in Zone B or C, which has implications for the type of sentence available (e.g., probation or imprisonment). Regardless of the applicable Zone in the Sentencing Table, a period of imprisonment is necessary to meet the statutory purposes of sentencing in this case, including promoting respect for the law, providing just punishment for the offense, achieving general deterrence, and avoiding excessive sentencing disparities. However,

1

the government recognizes the presence of mitigating factors under 18 U.S.C. § 3553(a), including the history and characteristics of the defendant. For these and the reasons set forth below, a sentence of eight months' imprisonment followed by a period of supervised release is sufficient but not greater than necessary to achieve the statutory purposes and goals of sentencing.

## I. The Defendant's Criminal Conduct

Apart from the proposed corrections agreed to by the parties, the facts listed in the Draft Presentence Investigation Report ("Draft PSR") are accurate. From approximately 2003 until April 2022, the defendant was the CEO and majority shareholder of a major defense contractor that provided ship husbanding services and port services for military vessels around the world. During that period, the defendant's company had over $100 million in U.S. Navy contracts in Bahrain alone.

On April 20, 2022, the defendant pleaded guilty to a one-count indictment charging him with paying a bribe of $33,500 to a public official, in violation of 18 U.S.C. §§ 201(b)(1)(A) & (C) and 2. Nearly a year prior, on June 10, 2021, the public official, United States Navy Marine Liaison Officer, Randy Alford, pleaded guilty to one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371.

At his April 20, 2022 change of plea hearing, the defendant admitted the following facts: from 2015 through 2021, the defendant gave Alford, a public official, money with the intent to influence him in the exercise of his official duty. *See* Transcript of Plea Hearing at 4-5. In August of 2015, the defendant gave Alford $20,000 cash, and in May 2018, the defendant gave Alford

$13,500 cash. *Id.* At the time the defendant gave Alford those payments, the defendant did so with the intent to induce Alford to take official acts to the benefit of the defendant and his company. *Id.*

## II. The Defendant's Conduct Warrants a Guidelines Sentence of Incarceration

To determine an appropriate sentence, the Court must first accurately calculate the defendant's sentencing guidelines range, and then consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A. The Guidelines Calculation

#### i. The Plea Agreement

Pursuant to the plea agreement in this matter, the parties have stipulated that the following guidelines apply:

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2C1.1(a)(2) | 12 |
| Value of Payment between $15,000 and $40,000 | U.S.S.G. § 2C1.1(b)(2) and (b)(1)(C) | 4 |
| | Total Offense Level | 16 |

*See* Plea Agreement, ¶ 3.

The government further agreed that the defendant should receive a two-point reduction for acceptance of responsibility. The government also believes that the defendant should receive an additional one-point reduction under the guidelines for providing the Court and the government with timely notice of his intention to enter a guilty plea. As contemplated in the plea agreement, the offense level was 13 and the estimated guideline range was 12 to 18 months. *See* Plea Agreement, ECF No. 44 at 3.

#### ii. The Draft PSR

As calculated in the Draft PSR, the defendant's total offense level was two levels higher than stipulated in the plea agreement. Draft PSR ¶ 77. Probation's calculation was based on the application of a specific offense characteristic for payment of more than one bribe, pursuant to

3

U.S.S.G. §2C1.1(b)(1), which the Court determined was appropriate in Alford's case. *See* Transcript of Sentencing at 4-5, *United States v. Alford*, No. 21-cr-379-DLF (D.D.C.) (November 9, 2022). As such, Probation determined the resulting total offense level was 15 and the estimated guideline range was 18 to 24 months. Draft PSR ¶ 77.

### iii. Criminal History

The defendant has zero criminal history points. Draft PSR ¶ 43. Under the newly adopted amendments to the U.S. Sentencing Guidelines, which took effect on November 1, 2023, as a zero-point offender whose offense did not involve specified aggravating factors, the defendant is eligible for a two-offense level decrease under § 4C1.1.

### iv. Guidelines Range

As calculated by Probation, the application of § 4C1.1 brings the defendant's offense level to a 13, resulting in a guideline range of 12 to 18 months. As calculated by the government, § 4C1.1 brings the defendant's offense level to an 11, resulting in a guideline range of 8 to 14 months.

### v. Government's Position on the Draft PSR

The government concurs with the Criminal History Category set forth in the Draft PSR. The government objects to the Draft PSR's offense level calculation and its total offense level. Specifically, the government objects to the application of a two-level upward adjustment under U.S.S.G. § 2C1.1(b)(1), as it differs from the stipulation in the Plea Agreement. *See* Plea Agreement at 3.

The key difference between the government's calculation and Probation's calculations is the applicable Zone in the Sentencing Table, which can have implications for the type of sentence available (e.g., probation or imprisonment). To provide the defendant with the benefit of his bargain, the government respectfully requests that the Court apply a total offense level of 11, which

4

with a Criminal History Category I, results in a guidelines range of 8 to 14 months (Zone B). However, the government does not believe a probationary sentence is appropriate, regardless of the total offense level of the guidelines.

### B. Section § 3553(a) Factors

In this case, a period of imprisonment is necessary to meet the statutory purposes of sentencing, including promoting respect for law, providing just punishment for the offense, achieving general deterrence, and avoiding excessive sentencing disparities. That said, the government recognizes the presence of mitigating factors under 18 U.S.C. § 3553(a), including the history and characteristics of the defendant. Weighing these factors, the government believes eight months' imprisonment is the appropriate sentence.

#### 1. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

While serving as a contractor for the United States Navy, the defendant gave a bribe to a public official. That is a serious offense. The defendant's criminal conduct took place over more than five years, from at least 2015 to 2021. *See* Rafaraci Statement of Offense ¶ 5. During that time, the defendant gave Alford $33,500 in cash, which was the total amount that Alford solicited from the defendant. As the defendant acknowledged at his April 20, 2022 change of plea hearing, the defendant did this with the intent to induce Alford to take official acts to benefit the defendant and his company. *See* Transcript of Plea Hearing at 4-5. It was a premeditated crime. After Alford solicited the money, the defendant had the opportunity to consider the implications before he directed others to withdraw cash from the company's bank accounts and gave it to a public official.

With respect to the defendant's role in the offense, he was the CEO of the company, and he controlled the money. The defendant was not the person at the port interacting with government officials regarding day-to-day operations. He was not even copied on most emails between MLS

5

employees and U.S. government officials. As such, the defendant did not have personal knowledge of many of the on-the-ground facts related to MLS's contracts in Bahrain, and he disputes the facts as recalled by other witnesses who personally participated in those events. There is a practical solution; in fact, it was specifically contemplated by the parties in preparing the defendant's Statement of the Offense. The Court need not take disputed facts into consideration in sentencing the defendant. The defendant should be sentenced for his offense of conviction. There is no dispute that he is guilty of that crime.

For sentencing purposes, the Commentary to the U.S. Sentencing Guidelines Manual § 2C1.1 states that the punishment should be commensurate with the gain to the payer or the recipient of the bribe, whichever is greater. *See* U.S. SENTENCING GUIDELINES MANUAL § 2C1.1 CMT. N. 7 (U.S. SENT'G Comm'n 2023). Given the nature of the offense, it is impossible to quantify the benefit the defendant received in return for the bribe he paid, or the loss to the government from the offense. Thus, the harm is measured by the value of the gain to the public official.

Although the defendant has acknowledged that his intent was to induce the public official to take official acts to benefit his company, the defendant maintains that neither he nor his company received an actual benefit as a result of the bribe. The government disagrees. In any event, this disagreement need not have a practical impact on the defendant's sentence, because the defendant's guidelines are based on the value of the benefit to the public official, not the benefit to the defendant or MLS. For that reason, the guidelines appropriately reflect the seriousness of the defendant's offense.

### 2. The History and Characteristics of the Defendant

The defendant is a highly educated and sophisticated businessman who ran what was once the "leading provider [of ship husbanding services] in the world." Draft PSR ¶¶ 61, 64. The defendant had the education and experience to appreciate that what he was doing was wrong.

However, the defendant has also demonstrated characteristics that warrant leniency. Specifically, the defendant is a first-time, non-violent offender, who has accepted responsibility and been cooperative with the government's investigation. After the defendant was indicted for bribery, the defendant voluntarily returned to the United States from Malta to face the charge against him. The defendant also made other efforts to be cooperative with law enforcement, including consenting to the search of his personal devices, voluntarily providing information to the government through counsel, and expressing his willingness to sit for an interview. The government credits the defendant's cooperation in the government's investigation of his conduct and factored that into the government's recommendation that an eight-month sentence is appropriate. The history and characteristics of the defendant are the driving mitigation factor in this case.

### 3. The Need to Promote Respect for the Law and Adequately Deter This Type of Criminal Conduct

While the United States does not believe the defendant presents a risk of re-offense, the sentence should reflect the need to promote general deterrence. The defendant's sentence should be sufficiently serious to deter government contractors from paying bribes and to deter public officials from putting greed above the rule of law. The need for general deterrence is particularly important in cases such as this one, which erode public confidence in our institutions and are notoriously difficult for law enforcement to detect. In addition to promoting respect for anti-corruption laws and deterring individuals in positions of public trust from engaging in corrupt behavior, strict sentences also serve to protect the public from the ongoing problem presented by procurement fraud and corruption in contracting. They send a message that government contracting requires integrity; it is not a job to be sought or accepted with the expectation that it

can be used to serve one's own interests. General deterrence is one of the prescribed goals of every sentencing, but it is a weighty factor in favor of a sentence of imprisonment in this case.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably … [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States,* 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall*, 552 U.S. at 54. "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

## III.     Restitution and Forfeiture

Although the provisions of the Mandatory Victim Restitution Act apply in this case, the government has not identified a specific monetary loss attributable to the defendant's conduct. Accordingly, the government is not seeking an order of restitution.

The government obtained a forfeiture money judgement of $33,500 against Randy Alford, which reflects the proceeds of the defendant's crime. The government is not seeking additional forfeiture as part of the judgment in this case.

**V.     Conclusion**

For the reasons set forth above, the government submits that a sentence of eight months' imprisonment followed by a period of supervised release is an appropriate sentence and sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

The government respectfully requests the opportunity to supplement its position or respond to the defendant or Probation Office as necessary.

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

By:     */s/ Lauren Archer*
       Lauren Archer
       Trial Attorney, Fraud Section
       Criminal Division
       United States Department of Justice
       1400 New York Avenue NW
       Washington, D.C. 20530
       Lauren.Archer2@usdoj.gov

## CERTIFICATE OF SERVICE

On November 2, 2023, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

*/s/ Lauren Archer*
Lauren Archer
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice